## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MOHAMMED MAHRAN

Plaintiff,

v.

COUNTY OF COOK, ET AL.

Defendant.

Case No. 21-cv-6325

Judge Mary M. Rowland

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Mohammed Mahran sued his former employer, Cook County Health and Hospital Systems (CCHHS), a subdivision of Defendant Cook County, and Cook County claiming that Defendants violated federal and state employment laws by discriminating and retaliating against him because of his religion, race, and disability. The Court dismissed Mahran's previous complaint without prejudice. [36]. Mahran has filed an amended complaint naming Cook County as the sole defendant. [52]. Before this Court is Defendant's motion to dismiss the amended complaint. [56]. For the reasons explained below, this Court grants in part Cook County's motion to dismiss [56].

### I.    Background

### A.    Background and pending claims

The Court recited most of the relevant facts in its order dismissing Mahran's first complaint. [36]. At all relevant times, Cook County Health and Hospital System (CCHHS), a division of Defendant Cook County, employed Mahran. *Id.* ¶¶ 3. On

1

March 18, 2019, Mahran began working for CCHHS's Provident Hospital in Chicago as a patient pharmacist. *Id.* ¶ 8. On August 5, 2020, CCHHS transferred Mahran to the Cermak Health Services Pharmacy (Cermak) at the Cook County Department of Corrections (Cook County Jail)[1] located at 2800 California Avenue, where he worked as a pharmacist in the opioid treatment program. *Id.* ¶ 28. Mahran requested and received intermittent unpaid medical leave on March 19, 2020, then received continuous leave from October 17, 2020, to January 14, 2021. *Id.* ¶¶ 39, 40, 120-121. Mahran returned to work on January 4, 2021. *Id.* Defendant terminated him on January 6, 2021. *Id.* ¶ 40. Throughout his employment, Mahran filed multiple grievances against CCHHS for discriminating against him based on his religion. *Id.* ¶ 21.

On April 5, 2022, Mahran filed a complaint alleging *inter alia* discrimination based on his religion, race, and national origin, and violations of the Americans with Disabilities Act of 1990 (ADA) and Family and Medical Leave Act (FMLA). [1] ¶¶ 17–139. Mahran also joined as a Defendant Local 200, the union that represented him when he worked at CCHHS. *Id.* Defendants filed separate motions to dismiss. [22], [24]. The Court dismissed CCHHS and Local 200 from the suit, as CCHHS is not a suable entity separate from Defendant Cook County, and Mahran did not exhaust his administrative remedies against Local 200. [36]. Against Defendant Cook County,

---

[1] Cermak Health Services is a division of the Cook County Health Department and provides health care to people detained in the Cook County Department of Corrections. It is the "largest single-site correctional health service in the country." *Cermak Health Services of Cook County*, Cook County Health, https://cookcountyhealth.org/locations/cermak-health-services-of-cook-county/ (last visited Nov. 16, 2023).

meanwhile, the Court dismissed all claims without prejudice and allowed Mahran to file an amended complaint. *Id.* at 15.

Mahran filed an amended complaint on March 6, 2023. [52]. The amended complaint alleges retaliation and/or discrimination based on religion, race and/or national origin in violation of Title VII (Counts I and II), failure to accommodate and discrimination based on disability in violation of the ADA (Count III), denial of benefits under FMLA (Count IV), Illinois common law retaliatory discharge (Count VI), religion and race-based discrimination in violation of the Illinois Human Rights Act (IHRA) (Count VII), and unconstitutional religious discrimination pursuant to 42 U.S.C. § 1983 (Count VIII). Before the Court now is Defendant Cook County's motion to dismiss all claims for failure to state a claim under Rule 12(b)(6). For the following reasons, the Court grants Defendant's motion in part and denies it in part.

## II.    Legal Standard

"To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to state a claim to relief that is plausible on its face and raise a right to relief above the speculative level." *Haywood v. Massage Envy Franchising, LLC*, 887 F.3d 329, 333 (7th Cir. 2018) (quotations and citation omitted); *see also* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). A plausible claim is one that alleges factual content from which the Court can reasonably infer that the defendant is liable for the misconduct as pleaded. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court deciding a Rule 12(b)(6) motion "construe[s] the complaint in the light most favorable to the plaintiff, accept[s] all well-pleaded facts as true, and draw[s] all reasonable inferences in the plaintiff's favor." *Lax v. Mayorkas*, 20 F.4th 1178, 1181 (7th Cir. 2021). However, the court need not accept as true "statements of law or unsupported conclusory factual allegations." *Id.* (citation and internal quotation marks omitted). "While detailed factual allegations are not necessary to survive a motion to dismiss, [the standard] does require more than mere labels and conclusions or a formulaic recitation of the elements of a cause of action to be considered adequate." *Sevugan v. Direct Energy Servs.*, LLC, 931 F.3d 610, 614 (7th Cir. 2019) (cleaned up).

Dismissal for failure to state a claim is proper "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). Deciding the plausibility of the claim is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Bilek v. Fed. Ins. Co.*, 8 F.4th 581, 586–87 (7th Cir. 2021) (quoting *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016)).

## III. Analysis

### A. Count I: Title VII Religious Discrimination and/or Retaliation.

The Court originally dismissed this claim for failure to exhaust administrative remedies. Mahran did not attach to the original complaint a right to sue letter from the Department of Justice acknowledging that he filed his Title VII charge with the EEOC and allowing him to proceed with a civil suit on the same basis. He does so

4

here, [52-1] at 7, satisfying the requirement to exhaust administrative remedies. *Chaidez v. Ford Motor Co.*, 937 F.3d 998, 1004 (7th Cir. 2019). Mahran also properly names Cook County as a defendant to all counts.

Defendant asserts Mahran has failed to state a claim. To make out a Title VII religious discrimination claim, Mahran must plead facts alleging that: 1) his bona fide religious observance or practice conflicts with an employment requirement; 2) he called the observance or practice to her employer's attention, and 3) the religious observance or practice was the basis for an adverse employment decision. *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 449 (7th Cir. 2013); *Porter v. City of Chicago*, 700 F.3d 944, 951 (7th Cir. 2012). To successfully plead a retaliation claim,[2] Mahran must allege that "he engaged in statutorily protected activity and was subjected to an adverse employment action as a result." *Carlson v. CSX Transp., Inc.*, 758 F.3d 819, 828 (7th Cir. 2014) (cleaned up). "Protected activities include opposing employment practices made unlawful under Title VII, whether internally or by filing a charge or participating in a Title VII investigation." *Elzeftawy v. Pernix Group, Inc.*, 477 F. Supp. 3d 734, 770 (N.D. Ill. 2020) (citing *Salas v. Wis. Dep't of Corr.*, 493 F.3d 913, 924 (7th Cir. 2007)).

As for the discrimination claim, there is no serious dispute that Mahran observed a bona fide religious practice conflicting with his work that he raised with

---

[2] Mahran frames Count I as a Title VII discrimination claim. However, he describes "retaliation" in the text of the complaint, [52] ¶ 57, and so the Court will construe Count I as an allegation of Title VII retaliation as well.

his supervisors.[3] Mahran alleges that his supervisor forbade him from performing compulsory prayers during his lunch break at Provident. [52] ¶ 17. However, Mahran already successfully lodged internal grievances and the EEOC complaint required CCHHS to change its policy. *Id.* at 19. Because the County remedied the grievance, it cannot provide the basis of a discrimination claim. However, Mahran also alleges he suffered retaliation for complaining about the religious discrimination. ¶ 57. Mahran also protested his transfer to Cermak in part because there was no place to pray on the premises. *Id.* ¶¶ 32-36. Mahran's internal complaints of discrimination do qualify as a Title VII protected activity, thus allowing his retaliation claim to survive.

Cook County argues Count I should be dismissed because Mahran does not allege an "adverse" employment action as required by Title VII. The Court disagrees. Plaintiffs must show a causal relationship between the protected characteristic and the adverse employment action at issue. *Bell v. City of Chicago*, 835 F.3d 736, 738 (7th Cir. 2016). An adverse employment action must also be materially adverse, not merely an inconvenience or a change in job responsibilities. *See Hilt–Dyson v. City of Chicago*, 282 F.3d 456, 465 (7th Cir. 2002); *Griffin v. Potter*, 356 F.3d 824, 829 (7th Cir. 2004) ("An adverse employment action is one that significantly alters the terms

---

[3] Cook County argues that Mahran's requests for prayer breaks at specific times amounted to his individual preference because he had a window of time to pray in. [57] at 4. Taking Mahran's allegations as true, though, the Court credits Mahran's assertion that he attempted to perform prayers within the County's "stipulated time." [52] ¶ 18, n. 1. This distinguishes *Porter v. City of Chicago*, 08-CV-165, 2011 WL 1261133 *5 (N.D. Ill. Mar. 31, 2011), *aff'd*, 700 F.3d 944 (7th Cir. 2012), where the court granted summary judgment to defendants where plaintiff's discrimination claim was based on her inability to attend her preferred church service. The *Porter* court found this did not constitute a serious conflict between plaintiff's religious observance and work duties because she had other opportunities to attend services. *Id.* at *5.

and conditions of the employee's job."). But an adverse employment action may comprise of a change in conditions "that subjects [the employee] to a humiliating, degrading, unsafe, unhealthful, or an otherwise significantly negative alteration in her workplace environment." *Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 919 (N.D. Ill. 2011) (citing *O'Neal v. City of Chicago,* 392 F.3d 909, 911 (7th Cir. 2004)).

Here, Mahran alleges that his denied requests to pray and the grievances he filed thereafter caused adverse employment actions, including the failure to provide staff to cover his shift while he prayed, the restriction of his FMLA, the transfer to Cermak, and ultimately his termination. [52] ¶ 57. Cook County contends that none of these actions count as adverse. The Court agrees that the failure to provide staff coverage during Mahran's prayer breaks is not an adverse employment action. *See Mahran v. Roseland Cmty. Hosp.*, 19-CV-7975, 2022 WL 160283, at *7 (N.D. Ill. Jan. 18, 2022). However, taking Mahran's allegations as true, the other three actions are plausibly adverse. A denial of FMLA benefits is an adverse employment action that may be linked to discrimination or retaliation under Title VII. *See Burlington Indus. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible employment action constitutes . . . a decision causing a significant change in benefits."); *Warren v. Millennium Hotels & Resorts*, 23-CV-1199, 2023 WL 5980012, at *3 (N.D. Ill. Sept. 14, 2023) (Noting plaintiffs need not know "exactly what caused an adverse employment action prior to discovery. Whether it was racial discrimination, retaliation for her complaints of that

discrimination, retaliation for her FMLA leave requests . . . or something else is a matter better left to later stages of litigation.").

Next, the transfer to Cermak may plausibly amount to an adverse employment action. Ordinarily, a lateral transfer that "does not involve a demotion in form or substance" cannot rise to the level of an adverse employment action. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 634 (7th Cir. 2013) (quoting *Williams v. Bristol–Myers Squibb Co.,* 85 F.3d 270, 274 (7th Cir. 1996).). However, a transfer that reduces opportunities for an employee to use "the skills in which he is trained and experienced," or else involves conditions that are "unsafe, unhealthful, or otherwise significantly negative alteration[s] in [a] workplace environment" can be characterized as an adverse action. *Tart v. Illinois Power Co.*, 366 F.3d 461, 475 (7th Cir. 2004). Here, Mahran includes factual allegations that his transfer to Cermak prevented him from exercising the "same level of knowledge and skill," involved more frequent, strenuous physical activity, and critically for him, did not afford him a place to pray onsite. [52] ¶ 31-33. The Court finds these circumstances are indicia of an actionable adverse action. *See Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993).

Finally, Cook County insists that the time gap between Mahran's complaints about religious discrimination in 2019 and his August 2020 transfer to Cermak, let alone his termination in January 2021, is too long to draw a causal link between the three events. While a substantial time lapse can undermine a claim of Title VII retaliation, plaintiffs need not show definitive causation to make out discrimination

8

at the pleading stage. *See Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010) (claim can survive a motion to dismiss with "enough details about the subject-matter of the case to present a story that holds together"). It is plausible that Mahran's religion-based grievances influenced Cook County's decision to transfer and ultimately discharge him. Moreover, Mahran alleges that he not only requested prayer accommodations at Provident, but also before and during his transfer to Cermak in 2020. [52] ¶ 32. Based on these allegations, the Court will allow Mahran the opportunity to develop the record on his religious discrimination and/or retaliation claim. The Court denies Cook County's motion to dismiss Count I.

### B. Count II: Title VII Discrimination Based on Race and/or National Origin

Mahran's claim of race and/or national origin-based discrimination pursuant to Title VII does not fare as well. Cook County argues that allegations in Count II are conclusory and lack a factual nexus between his race and any adverse employment actions he experienced. The Court agrees.

To state a claim for discrimination under Title VII, a plaintiff "need only aver that the employer instituted a (specified) adverse employment action against the plaintiff on the basis of" a protected characteristic. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008). Still, simply pleading that a plaintiff belongs to a particular protected group and suffered mistreatment is not enough. *Bell*, 835 F.3d at 738. Some causal relationship beyond "mere labels and conclusions" must be shown. *Id.* (internal quotations omitted). This relationship can be shown or inferred in a variety of ways, but without it, a discrimination claim cannot survive a motion

to dismiss. *Kaminski v. Elite Staffing, Inc.*, 23 F.4th 774, 776 (7th Cir. 2022) ("a plaintiff must advance plausible allegations that she experienced discrimination because of her protected characteristics.").

Mahran has not met this low bar to state a claim of race- or national origin-based discrimination. Mahran is of Middle Eastern descent and hails from Egypt. [52] ¶ 13. He alleges that he received less favorable work assignments at the Cermak jail due to his race and national origin. *Id.* ¶ 30. Mahran also alleges that his transfer and termination were racially biased. *Id.* ¶¶ 63-74. Beyond these conclusory statements, Mahran does not allege facts that give rise to a plausible inference that Cook County mistreated him based on those protected characteristics. The only factual detail Mahran provides is that his fellow pharmacists at Cermak, none of whom were Middle Eastern or Egyptian, received physically demanding work assignments. *Id.* ¶ 30. That meager assertion does not plausibly connect Mahran's mistreatment by Cook County to his race or national origin. Accordingly, the Court grants Cook County's motion to dismiss Count II.

### C. Count III: ADA Claim

In Count III, Mahran accuses Cook County of both failing to accommodate his disability and discriminating against him for being disabled. The Court previously dismissed this claim because Mahran failed to identify a specific disability. [36] at 11. Mahran has amended his complaint to plead specific medical conditions. [52] at ¶¶ 22, 81. Cook County moves to dismiss, arguing that Mahran still does not name a qualifying disability under the ADA, nor did he suffer an adverse employment action due to his disability. The Court agrees with Defendant.

10

To succeed on a claim for failure to accommodate an employee's disability, a plaintiff must prove: "(1) the employee was a qualified individual with a disability; (2) the employer was aware of the disability; and (3) the employer failed to reasonably accommodate the disability." *Scheidler v. Indiana*, 914 F.3d 535, 541 (7th Cir. 2019). As for a claim of disparate treatment due to disability, a plaintiff must prove: "(1) plaintiff was disabled; (2) plaintiff was qualified to perform essential functions with or without reasonable accommodation; and (3) the disability was the 'but for' cause of adverse employment action." *Id.*

A person is considered "disabled" under the ADA if they have "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). The definition of "major life activities" includes "caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A). Here, Mahran alleges that he suffers from "asthma, morbid obesity, sleep apnea, plantar fasciitis, and panic attacks." [52] ¶ 81. These conditions affect his daily activities such as "breathing, sleeping, walking for long periods of time, running, climbing stairs, and standing for long periods of time." *Id.* ¶ 22.

The threshold question of whether a plaintiff is disabled is rarely appropriate to decide based on pleadings. *Homeyer v. Stanley Tulchin Assocs., Inc.*, 91 F.3d 959,

11

961-62 (7th Cir. 1996).[4] "[A] determination of disability must be made on a case-by-case basis" with fleshed out facts. *Id.* at 962. So too for the question of whether a disability substantially limits a major life activity. *Id.* Mahran has alleged enough facts to survive a motion to dismiss, naming specific medical conditions that may amount to disabilities and connecting them to affected life activities. *See Jordan v. Sch. Bd. Of City of Norfolk*, 640 F. Supp. 431, 442 (E.D. Va. 2022) ("The operation of an individual's respiratory system constitutes a major life activity.") (internal citations omitted). The Court will not dismiss Mahran's ADA claim on this basis.

However, Mahran has failed to plead that he suffered an adverse employment action to establish a disparate treatment claim, or that his employer did not make a reasonable accommodation of his disability to plead a failure to accommodate claim. Mahran alleges that Dr. CaTanya Norwood, Senior Director of Pharmacy Services at Provident, discriminated against his disability by changing the terms of his FMLA leave. [52] ¶ 91. Yet that is a claim properly brought (if at all) under the FMLA, not under the ADA. He also complains about an accommodation he needed after an injury (less than 15 minutes of standing per hour). *Id.* ¶¶ 98-99, 101, 111. Still, Mahran does not allege that the injury, which occurred on August 25, 2020, constitutes a disability. That injury may, again, constitute the basis of an FMLA claim but does not plausibly allege a disability under the ADA. Finally, his assertion that CCHHS terminated him

---

[4] The Court notes that morbid obesity and sleep apnea are rarely found to be qualifying disabilities, *see, e.g., Richardson v. Chicago Transit Auth.*, 926 F.3d 881 (7th Cir. 2019) (holding that severe obesity, by itself, fails to constitute a disability under the ADA), *Edwards v. Dart*, 21-CV-5665, 2022 WL 3543474, at *4 (N.D. Ill. Aug. 17, 2022) (collecting cases wherein only "severe" sleep apnea counts as ADA disability). Plaintiffs suffering from asthma, meanwhile, have a slightly better chance of qualifying as disabled under the ADA. *See Riemer v. Illinois Dept. of Transp.*, 148 F.3d 800, 804 (7th Cir. 1998).

in connection with his disabilities, [52] ¶112, is conclusory. The Court grants Cook County's motion to dismiss Count III.

### D. Count IV: Denial of FMLA Benefits

Cook County next moves to dismiss Mahran's claim of interference with FMLA benefits. Mahran must allege that the FMLA entitled him to benefits and that his supervisors denied him leave. Mahran responds that he does not need to show that Cook County denied him leave, but rather that it interfered with his benefits generally. The Court credits Mahran's broader view of FMLA interference.

The FMLA makes it "unlawful for any employer to interfere with . . . the attempt to exercise, any right provided under [the Act]." 29 U.S.C. § 2615(a)(1). An employer also cannot retaliate against an employee for exercising FMLA rights. 29 U.S.C. § 2615(a)(2), (b). 1. "To prevail on a claim that an employer interfered with the employee's rights under the FMLA, the employee must demonstrate (1) he was eligible for the FMLA, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." *Lutes v. United Trailers, Inc.*, 950 F.3d 359, 363 (7th Cir. 2020).

Cook County maintains that Mahran fails to establish the third element, that he was entitled to FMLA benefits. Cook County argues that Mahran was not eligible because he did not suffer from a serious health condition that qualified him for FMLA relief. *See Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006). A serious health condition under the FMLA is "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical

13

care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). Mahran alleges that he produced a doctor's note stating his diagnoses of asthma, morbid obesity, sleep apnea, and panic attacks, [52] ¶¶ 99-100, in August 2020, well after he originally requested intermittent FMLA leave on March 18, 2020. Therefore, according to Cook County, Mahran has not pled that he was eligible for FMLA benefits when he first requested them. However, Mahran alleges more generally in the amended complaint that he is under "regular and continuous doctor's care for his asthma, plantar fasciitis, and sleep apnea." *Id.* ¶ 22. Mahran also alleges that he provided CCHHS with a certification from his treating healthcare provider when he requested leave in March 2020. *Id.* ¶118. Mahran has plausibly alleged that he suffered from a serious health condition before March 2020.

Next, Cook County argues that Mahran fails to establish he was ever denied FMLA benefits. Mahran was granted intermittent FMLA leave for the period between March 19, 2020 and March 19, 2021, and then granted continuous leave from October 17, 2020, to January 14, 2021. [52] ¶¶ 120-21. He returned to work on January 4, 2021, and was discharged two days later, on January 6, 2021. *Id.* ¶¶ 40, 125. Cook County contends that the fact that Mahran received leave contradicts with his claim of interference, and he cannot plausibly link his termination to his approved FMLA requests. Mahran responds that Cook County interfered with his benefits by terminating him while he was approved for leave until March 2021 and by not allowing him to return to his position after leave. He also alleges an act of interference in July 2020 by Norwood. *Id.* ¶ 25.

The allegation that Norwood restricted his leave falls within the meaning of interference under the FMLA. As for Mahran's termination, the Court will not close the door to an interference claim connected to his firing. Employers interfere with FMLA benefits when they "use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions . . ." 29 C.F.R. § 825.220(c). Ergo, the fact that an employee is ultimately approved for FMLA does not absolve an employer from liability for alleged interference with the attempt to obtain leave. *Zedov v. Mr. Bult's Inc.*, 612 F. Supp. 3d 812, 817 (N.D. Ill. 2020). "Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights." *Simpson v. Off. of Chief Judge, Cir. Ct. of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009) (internal citations omitted). Though Mahran returned to the same position after taking leave, he was fired 2 days later. CCHHS terminated Mahran, not due to performance, but rather an inaccurate response on his employment application filed two years prior. [52] ¶ 40. An FMLA claim may be borne out by circumstantial evidence including suspicious timing or a pretextual decision. *See Pagel v. TIN Inc.*, 695 F.3d 6222, 631 (7th Cir. 2012). The Court denies Cook County's motion to dismiss Count IV.

### E. Count VI: Common law retaliatory discharge

Cook County argues that Mahran's retaliatory discharge under Illinois common law is preempted by his subsequent pleading of an IHRA violation. The Court dismisses this claim in part.

To establish retaliatory discharge in Illinois, a plaintiff needs to show that 1) he was discharged, 2) in retaliation for his activities, and 3) that the discharge violated a clear mandate of public policy. *Teruggi v. CIT Group/Capital Fin., Inc.,* 709 F.3d 654, 661 (7th Cir. 2013). The Illinois Supreme Court has defined public policy concerns to include "what is right and just and what affects the citizens of the State collectively." *Palmateer v. Int'l Harvester Co.,* 52 Ill.Dec. 13, 421 N.E.2d 876, 877–79 (Ill.1981). The matter "must strike at the heart of a citizen's social rights, duties, and responsibilities." *Id.* at 878–79. A claim for retaliatory discharge will be denied if only private interests are affected. *Sullivan v. Progressive Cas. Ins. Co.,* 03-CV-8487, 2004 WL 1687123, at *3-5 (N.D. Ill. July 27, 2004). Mahran alleges his termination was in response to his requests for FMLA leave, reports of other employees' overtime violations and errors on the job, and reports of CCHHS officers' discriminatory acts. Mahran further pleads that his actions concerned national and state public policies "in favor of reporting other CCHHS employees' activities, taking FMLA leave, and reporting discrimination by CCHHS officers." [52] ¶ 137.

By alleging he was fired for whistle-blowing, Mahran makes out the elements of the retaliatory discharge claim. *Weller v. Paramedic Servs. of Illinois, Inc.,* 297 F. Supp. 3d 836, 848 (N.D. Ill. 2018) (citing *Jacobson v. Knepper & Moga, P.C.*, 185 Ill.2d 372, 376, 235 Ill.Dec. 936, 706 N.E.2d 491 (1998) (recognizing Illinois Supreme

Court's expansion of common law retaliatory discharge to protect whistle-blowing activity).

The denial of Mahran's FMLA benefits, on the other hand, is not a public policy concern shared by Illinois citizens. FMLA claims only affect the "private relationship between an employee and employer," *Handel v. Belvedere USA Corp.*, 2001 WL 1286842, at *4 (N.D. Ill. Oct.22, 2001), and thus cannot form the basis for a retaliatory discharge claim. *Rowe v. U.S. Bancorp*, 4:11-CV-4015-SLD-JAG, 2012 WL 733859, at *6 (C.D. Ill. Mar. 6, 2012) (collecting Northern District cases); *Smith v. MGM Resorts Int'l*, 16-CV-07215, 2016 WL 7049062 (N.D. Ill. Dec. 5, 2016), at *5. The Court therefore dismisses the retaliatory discharge claim based on the denial of Mahran's FMLA benefits.

Cook County also argues Count VI is preempted because Mahran pleads in other counts that his discharge was a result of discrimination based on his religion, race and/or national origin, and disability, all civil rights violations exclusively addressed by the Illinois Human Rights Act. 775 ILCS 5/1-102. The IHRA preempts any state common law claim "inextricably linked" to civil rights violations covered by the Act. *Krocka v. City of Chicago*, 203 F.3d 507, 516-17 (7th Cir. 2000). A plaintiff who can "establish a basis for imposing liability on defendant[] independent of the Act" may proceed with a stand-alone common law claim. *Nelson v. Realty Consulting*

*Servs.*, Inc., 431 Fed. App'x 502, 507 (7th Cir. 2011) (citing *Blount v. Stroud*, 232 Ill.2d 302, 328 Ill.Dec. 239, 904 N.E.2d 1, 10 (2009)).

Here, while there may be a connection between Mahran's religion and his getting fired, Mahran pleads that his reporting other CCHHS employees' overtime violations was an independent basis for his termination. [52] ¶¶ 134-35. Whistle-blowing unlawful practices is not "inextricably linked" to claims of discriminatory animus under the IHRA. *Boring v. World Gym--Bishop, Inc.*, 06-CV-3260, 2008 WL 410638, at *3 (N.D. Ill. Feb. 13, 2008) (allowing common law retaliatory discharge claim where plaintiff alleged she was fired for reporting accounting discrepancies "without reference to her disability."). However, reporting CCHHS officers' discriminatory acts is an activity that refers to (and requires proof of) Mahran's IHRA-protected characteristic of religion. The IHRA itself prohibits retaliation against employees who complain about unlawful discrimination, or who have filed a charge under the IHRA. *Shamim v. Siemens Indus., Inc.*, 854 F. Supp. 2d 496, 510 (N.D. Ill. 2012). ("[T]he basis for a claim of retaliatory discharge where the plaintiff complains of discriminatory treatment are found in the policies that underlie the IHRA and the claim is therefore preempted by the IHRA.").

Count VI is thus dismissed in part. Mahran may only proceed with a common law retaliatory discharge claim on the theory that he was fired for reporting other employees' unlawful practices. He may not raise his request for FMLA benefits or

complaints of discriminatory practices by CCHHS officers as a basis for his discharge under the common law.

### F. Count VII: IHRA Claim

Mahran includes in his amended complaint a new claim for violations of the IHRA. [52] ¶¶ 139-44. Cook County moves to dismiss the claim for failure to exhaust administrative remedies because Mahran fails to attach proof that he filed a claim with the Illinois Department of Human Rights or that the state agency issued him a right to sue letter. Plaintiffs seeking claims under the IHRA must first avail themselves of the administrative remedies contained in the Act. *Garcia v. Village of Mt. Prospect*, 360 F.3d 630, 640 (7th Cir. 2004). Mahran concedes that he does not show proof of exhaustion, relying instead on the workshare agreement between the IHRA and EEOC that automatically cross-files claims filed with either agency. 775 ILCS § 5/7A-102(A-1)(1). Still, Mahran is required to notify the IDHR of the resolution of his claim with the EEOC. 775 ILCS § 5/7A-102(A-1)(3)(a). Only once he receives a right to sue letter from the IDHR may he proceed with a claim under the Act. *Donald v. City of Chicago*, 539 F. Supp. 3d 912, 920-22 (N.D. Ill. 2021). The Court grants Cook County's motion to dismiss Count VII.

### G. Count VIII: Section 1983 Claim (Religious discrimination)

Cook County moves to dismiss Count VIII, a Section 1983 claim for religious discrimination pursuant to *Monell v. Department of Social Services of the City of New*

*York*, 436 U.S. 658 (1978). The Court dismissed this claim from the original complaint for Mahran's failure to plead facts supporting a *Monell* theory of municipal liability.

Cook County first argues that Mahran's allegations of religious discrimination are too conclusory to survive a motion to dismiss. The Court previously held that the complaint contained enough allegations to state a plausible equal protection violation. [36] at 12-15. Thus, the claim will not be dismissed on this basis.

Cook County also argues that Mahran fails to sufficiently plead facts to establish municipal liability. The Court agrees. Mahran does not include new facts to build out a theory of a municipal "express policy" or "widespread practice" of religious discrimination. Instead, he alleges new details about Norwood's job description as Senior Director of Pharmacy Services to contend that she wielded "final policymaker" authority to cause his constitutional injury.

As the Court previously explained, "[t]here must be a delegation of authority to set policy for hiring and firing" to a certain individual for them to qualify as a final policymaker incurring *Monell* liability. *Okoro v. Cook Cnty. Health & Hosp. Sys.*, No. 19-CV-06061, 2022 WL 1266432, at *4 (N.D. Ill. Apr. 28, 2022) (quoting *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 739 (7th Cir. 1999)). In the first version of the complaint, Mahran pointed to Norwood's title as Senior Director to conclude, without more, that she had final policymaker authority. *See* [36] at 13. Now, he alleges specific actions taken by Norwood — that she was one of Mahran's two hiring interviewers and she signed the disciplinary form ordering his termination — as well as details from her LinkedIn profile webpage. [52] ¶ 89-90, n.4. Mahran

20

alleges that Norwood "reports directly to the Chief Operating Officer of CCHHS, oversees thirteen pharmacies, oversees pharmacy budgets, oversees a staff of more than 300 employees, coordinates pharmacy services, develops and implements initiatives and programs within CCHHS, and identifies and implements strategies to improve CCHHS' processes." *Id.*

These job duties indicate that Norwood has managerial authority and policy discretion. Still, the amended complaint fails to plausibly allege that Norwood was a policymaker. "[J]ust because [the individual] is the *decisionmaker* on hiring/firing decisions for the Village government does not necessarily make him [or her] the *policymaker* on those issues." *Kristofsek v. Village of Orland Hills*, 712 F.3d 979, (7th Cir. 2013) (quoting *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 674 (7th Cir. 2009). The fact that Norwood's signature appears on Mahran's termination form is not enough on its own to deem that she had authority over policy. Rather, Mahran must allege that Norwood's personnel decisions were unreviewed (or unreviewable), not because she had the final say just on who was hired or fired. *Id.*

For these reasons, this Court grants Cook County's motion to dismiss the equal protection *Monell* claim contained in Count VIII.

## IV. Conclusion

For the reasons explained above, this Court grants in part Cook County's motion to dismiss [24]. Counts II, III, VII, and VIII are dismissed. (There is no Count V). Count VI, the common law retaliatory discharge claim, is dismissed to the extent that Mahran cannot rely on the denial of FMLA benefits or discriminatory actions

21

covered under the IHRA to make out a claim of retaliation. As this is Plaintiff's second amended complaint, the claims are dismissed with prejudice.

Dated: November 17, 2023

E N T E R:

_____

MARY M. ROWLAND
United States District Judge