## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MOHAMMED MAHRAN,

Plaintiff,

v.

COUNTY OF COOK ILLINOIS,

Defendant.

Case No. 1:21-cv-06325

Judge Mary M. Rowland

## MEMORANDUM OPINION AND ORDER

Plaintiff Mohammed Mahran has sued Defendant County of Cook Illinois ("Cook County" or "the County"), bringing claims for religious discrimination under Title VII of the Civil Rights Act of 1964, violations of the Family and Medical Leave Act ("FMLA"), and retaliatory discharge. Before the Court now is Defendant's motion for summary judgment [98]. For the reasons stated below, Defendant's motion for summary judgment is granted.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id*. After a "properly supported motion for summary judgment is made, the

1

adverse party 'must set forth specific facts showing that there is a genuine issue for trial.'" *Id*. at 250 (quoting Fed. R. Civ. P. 56(e)).

The Court "consider[s] all of the evidence in the record in the light most favorable to the non-moving party, and [ ] draw[s] all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Logan v. City of Chicago*, 4 F.4th 529, 536 (7th Cir. 2021) (quotation omitted). The Court "must refrain from making credibility determinations or weighing evidence." *Viamedia, Inc. v. Comcast Corp*., 951 F.3d 429, 467 (7th Cir. 2020) (citing *Anderson*, 477 U.S. at 255). In ruling on summary judgment, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chicago*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.*

## BACKGROUND[1]

### I.     Local Rule 56.1

"Local Rule 56.1 statements serve to streamline the resolution of summary judgment motions by having the parties identify undisputed material facts and cite the supporting evidence." *Laborers' Pension Fund v. Innovation Landscape, Inc.*, No. 15 CV 9580, 2019 WL 6699190, at *1 (N.D. Ill. Dec. 9, 2019). The Seventh Circuit has "consistently upheld district judges' discretion to require strict compliance with Local

---

[1] Unless otherwise indicated, all facts are taken from the parties' Rule 56 Statements.

Rule 56.1." *Kreg Therapeutics, Inc. v. VitalGo, Inc.*, 919 F.3d 405, 414 (7th Cir. 2019) (quotation omitted). "We have frequently said that it is within the district court's discretion to strictly enforce local rules regarding summary judgment by accepting the movant's version of facts as undisputed if the non-movant has failed to respond in the form required." *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 648 (7th Cir. 2014).

Here, Mahran repeatedly failed to comply with Local Rule 56. In purporting to dispute Defendant's statement of facts, Mahran frequently relied only on his pleadings, or on non-specific citations to multiple exhibits totaling nearly 1,000 pages. This is insufficient to create a genuine dispute of fact. *See Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir.1997) ("The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence."); *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir.1991) ("Judges are not like pigs, hunting for truffles buried in briefs."). Mahran's own statement of additional facts suffers from similar defects. Accordingly, as the Court recounts the material facts below, it notes where it deems a fact undisputed over a party's improper objection.

## II.  **Mahran's EEO Complaint**

Mahran, a Muslim man, began working as an inpatient pharmacist for Cook County in March of 2018. [104] ¶ 1. Initially, Mahran worked as a pharmacist at Provident Hospital ("Provident"). [104] ¶ 2. In September 2019, Mahran filed a

3

complaint with the Equal Employment Opportunity ("EEO") office within the Cook County Health and Human System ("CCHHS"). [104] ¶ 8. Mahran argued in his complaint that a co-worker prevented him from observing the Salah prayer, a five-minute prayer that practitioners of Islam undertake on Friday afternoons. [104] ¶¶ 8-9. Mahran's complaint was successful, and as a result management and the internal EEO office made schedule changes to allow him to observe the prayer. [109] ¶ 2.

### III.    Family and Medical Leave Act

In March 2020, Mahran requested leave under the Family and Medical Leave Act ("FMLA") from a Cook County Human Resources officer. [104] ¶ 15. Mahran's request for leave was approved a few weeks later. [104] ¶ 15. In July 2020, Mahran met with his management to review the terms of his leave; Mahran's management met with all similarly situated employees to have the same meeting. [104] ¶¶ 16-17.[2] During this meeting, Dr. Norwood, the senior director of pharmacy services at CCHHS, explained to Mahran that he was required to call in at least two hours before using any leave under the FMLA (the "call-in policy"). [104] ¶ 19; *see also* [101-4] ¶ 15. All relevant employees were required to abide by the call-in policy. [104] ¶ 19.

At the time, Mahran believed that the policy was not uniformly enforced. [109] ¶ 12. Mahran wrote on a form describing the policy: "if approved for everyone and applied for everyone." [109] ¶ 12. Mahran was disciplined for writing the comment on

---

[2] Mahran purports to dispute that management met with all similarly situated employees but does so with only a cite to his complaint. [104] ¶ 17. For the reasons discussed above, this in insufficient to create a genuine dispute of fact. Accordingly, the fact is deemed admitted and undisputed.

the form. [109] ¶ 15. Further, around this time, Mahran began to complain that he was being denied overtime. [109] ¶ 17.

Mahran admits he was never disciplined related to the call-in policy and was never discouraged from taking leave pursuant to the FMLA. [104] ¶ 26.

## IV.    EMERS Reporting

While working at Provident, Mahran made multiple reports regarding patient safety or personal interest to the County's EMERS system. [104] ¶ 68. The EMERS system existed to gather, analyze, and act on data to improve patient, system, and employee experiences. [104] ¶ 68. Specifically, Mahran used the system to report errors that other pharmacists made. [109] ¶ 4. Mahran asserts that one of his supervisors, Dr. Leung, reprimanded Mahran for reporting the errors because it created additional work for him. [109] ¶ 6.[3] Mahran filed a grievance alleging that Dr. Leung was preventing him reporting safety concerns on August 10, 2020. [109] ¶ 8.

## V.    Transfer to Cermak Jail

In August 2020, Mahran was transferred to a role at Cermak Jail ("Cermak"). The parties present different facts surrounding the transfer, but ultimately very few material facts are disputed.

In Defendant's telling, Dr. Norwood determined there was a need for additional staffing at Cermak Jail ("Cermak") in early July 2020 due to the COVID-19 pandemic.

---

[3] Defendant purports to dispute this fact but the evidence that Defendant cites to does not contradict or genuinely dispute that Dr. Leung reprimanded Mahran for reporting mistakes because it created additional work for him.

[104] ¶ 28. Dr. Norwood chose to temporarily transfer Mahran because he was the least senior pharmacist at Provident. Mahran was informed about the transfer on August 5, 2020. [104] ¶ 31. The transfer did not affect Mahran's pay, benefits, full-time status, or other employment opportunities. [104] ¶ 32.

Mahran purports to dispute all of the facts in the preceding paragraph. In so doing, however, he cites intermittently to (a) his complaint, (b) his 446-page deposition, and (c) 17 different exhibits, each without any pin cite or any degree of specificity. *E.g.,* [104] ¶ 28. This is insufficient to create a dispute of fact. With respect to Mahran's dispute that he was transferred because he was the least senior pharmacist at Provident, Mahran also cites to Plaintiff's Exhibit 9, again without any pin cite or specificity. Plaintiff's Exhibit 9 establishes that four other pharmacists were hired at CCHHS facilities other than Provident between June 2019 and March 2020. [109] ¶ 22. But the document does not address whether: (a) Mahran was the least-senior pharmacist at Provident; (b) Mahran was transferred because of his seniority at Provident; (c) the more recently hired pharmacists had the same job responsibilities and thus would have been qualified to work at Cermak;[4] or (d) any of them were still employed by CCHHS at the time Mahran was transferred. Accordingly, the above facts—that Mahran was transferred because of a staffing shortage at Cermak; that he was chosen for transfer because he was the least-senior pharmacist at Provident; and that his pay, benefits, full-time status, and employment opportunities were unchanged—are deemed undisputed and admitted.

---

[4] The four more-recently hired pharmacists all had different job titles than Mahran. [109] ¶ 22.

In his Rule 56 Statement, Mahran highlights other undisputed facts. Between October 2019 and July 2020, Mahran sent representatives from his union multiple emails wherein he complained that he was being discriminated against on the basis of his religion, denied overtime, and subject to a hostile work environment. [105-5]. On July 20, 2020, Lisa Russell, the president of his union, forwarded the email thread to George Leonard[5] and Tim Hoppa, who at the time was operations counsel for Cook County. Russell said:

> Just received this email from Mohammed Mahran. I thought that in our meeting with him that we covered all of these issues. He states that the issues at Provident are getting worse. I called over to Provident, there does not seem to be any problems. Can you find out if this has some merit? Let me know. We need to have him moved as soon as possible. I will reach out to Tim again.

[105-5] at 1 (the "Russell Email").

On July 27, 2020, Hoppa emailed Dr. Norwood and said "Recruitment tells me there are no pharmacist vacancies at Cermak that are approved and funded . . . I obviously can't move Mahran unless there is a funded vacancy." [109] ¶ 19. Defendant does not dispute the contents of either email.

In any event, Mahran was in fact transferred to Cermak and reported to his position there on August 17, 2020. [104] ¶ 34. On August 24, 2020, Mahran claimed that he was injured at work, and later filed a workers compensation claim and application for disability benefits, related to a diagnosis of a foot injury, asthma

---

[5] Mahran does not identify who George Leonard is in either his Rule 56 Statement or his brief. However, the Court understands from the record that he was president of the local union chapter to which Mahran belonged.

exacerbation, and panic attacks. [104] ¶ 39. As a result of the injury, Mahran was on leave[6] until January 4, 2021, when he returned to work at Cermak. [104] ¶ 47.

Mahran worked at Cermak for a total of seven days. [104] ¶ 12. Only one of those days was a Friday, and on that day, he observed the Salah prayer without incident. [104] ¶ 13. During all relevant times, there was a place to pray onsite at Cermak. [104] ¶ 14.[7]

## VI.    The Krasucki Email

On September 24, 2020, Mahran emailed Carrie Pramuk-Volk (the Interim Chief Human Resources Officer) and Nic Krasucki (the EEO Director) asking for "all documents and policies related to how Cook County accommodates both disabled individuals and work injured employees inside the pharmacy department and outside of it." [109] ¶ 40.

Krasucki replied to Pramuk-Volk only and said:

> The problem is he is going to continue repeating himself about wanting a document that has a phase "the essential functions include," and no such document exists. We can discuss today how to silence him and his repeated nonsense.

(the "Krasucki Email"). [105-18]. Pramuk-Volk replied "How ominous . . ." and included a smiley face emoji. [105-18].

## VII.    OIIG Investigation and Termination

---

[6] The parties disagree about whether Mahran took leave pursuant to the FMLA or under a separate workers' compensation policy. [104] ¶ 45.

[7] Mahran purports to dispute this fact but does so with only a cite to his complaint. [104] ¶ 14. For the reasons discussed above, this in insufficient to create a genuine dispute of fact. Accordingly, the fact is deemed admitted and undisputed.

8

At some point prior to December 17, 2020, Cook County's Office of the Independent Inspector General (the "OIIG") began an investigation in the application form that Mahran's filled out when he applied for a job with CCHHS. *See* [104] ¶ 49. The OIIG determined that on his job application, Mahran falsely represented that he had left his prior job at Advocate Christ Medical Center ("Advocate") because was seeking a better position. [104] ¶ 51. The OIIG determined that his employment with Advocate ended after Advocate terminated him. [104] ¶ 51.

The OIIG interviewed Mahran to discuss this discrepancy and asked Mahran whether he was terminated by Advocate. [104] ¶ 50; [101-36] at 6. The OIIG also asked Mahran whether he had sued Advocate; Mahran originally stated that he could not recall and then stated that he was declining to answer on the advice of counsel. [104] ¶ 50; [101-36] at 6. In actuality, Mahran was terminated by Advocate, had sued Advocate, had lost that litigation in the district court on summary judgment, and was actively appealing that decision during or around the time of the interview. *See* [104] ¶ 54; *see also Mahran v. Advocate Christ Medical Center*, 12 F.4th 708 (7th Cir. 2021).[8]

Following its investigation, the OIIG recommended that Mahran be terminated for "providing false information in his application for employment with CCH" and "violat[ing] his duty to cooperate in an OIIG investigation . . . [by] repeatedly [seeking] to mislead the OIIG." [101-36] at 7. After the OIIG issued its

---

[8] Mahran purports to dispute each fact in this paragraph. However, in so doing, he fails to cite to any part of the record that disputes or challenges the accuracy of any of the facts. *See* [104] ¶¶ 50, 54. Accordingly, each fact is considered admitted and undisputed.

recommendation, Dr. Norwood presided over a disciplinary hearing. [109] ¶ 39. Dr. Norwood decided to terminate Mahran, and the termination became effective on January 6, 2021. *See* [104] ¶¶ 55-56.

### VIII.  Procedural History

Mahran brought his first complaint in this action on November 24, 2021, bringing seven counts against Cook County, CCHHS, his union, and his local union chapter. [1]. The complaint contained counts for religious and racial discrimination (both under Title VII of the Civil Rights Act), violations of the Americans with Disabilities Act ("ADA"), violations of the FMLA, violations of the Age Discrimination in Employment Act ("ADEA"), a claim for common law retaliatory discharge, a breach of contract claim, and a Section 1983 claim. *See generally* [1]. The Court granted Defendants' motions to dismiss in whole or in part and granted Mahran leave to amend.

Mahran filed an amended complaint on October 26, 2022, naming Cook County as the sole defendant. [38]. Cook County timely moved to dismiss the complaint [41], and Mahran subsequently filed a motion for leave to amend his complaint. [49]. The Court granted leave to amend and Mahran filed a second amended complaint (the "SAC") [52] on March 6, 2023.

The SAC again contains claims for religious and racial discrimination in violation of Title VII, violations of the ADA, denial of benefits under the FMLA, a common law retaliatory discharge claim, and religion and race-based discrimination in violation of the Illinois Human Rights Act (IHRA), and violations of Section 1983. [52].

Following motion practice, the Court dismissed with prejudice all claims but three. The remaining counts are a claim for religious discrimination in violation of Title VII, violations of the FMLA, and common law retaliatory discharge. Cook County moves for summary judgment on each.

## ANALYSIS

### I. Religious Discrimination Claim

Title VII prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). In discrimination cases, "[w]hen a defendant moves for summary judgment, the 'singular question' for the district court is whether the plaintiff has introduced evidence that would 'permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Purtue v. Wisconsin Dep't of Corr.*, 963 F.3d 598, 602 (7th Cir. 2020), *reh'g denied* (July 31, 2020) (quoting *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 894 (7th Cir. 2018)).

The Seventh Circuit has provided two frameworks that allow a plaintiff to withstand summary judgment on a discrimination claim brought under Title VII. First is the *McDonnell Douglas* approach, which "requires a plaintiff to make a *prima facie* case of discrimination, at which point the burden shifts to the employer to offer a nondiscriminatory motive, and, if the employer does so, the burden shifts back to the plaintiff to show that the employer's stated reason was a pretext." *Purtue*, 963 at

601. "To make a prima facie case under *McDonell Douglas*, a plaintiff must show: (1) he belongs to a protected class; (2) he met his employer's legitimate expectations; (3) he suffered an adverse employment action; and (4) another similarly situated employee outside of his protected class received better treatment from his employer." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021) (citing *Marshall v. Indiana Dep't of Correction*, 973 F.3d 789, 791–92 (7th Cir. 2020)).

More recently, however, the Seventh Circuit explained in *Ortiz* that a plaintiff need not rely on *McDonnell Douglas*, saying that "[w]hat matters is whether [the plaintiff] presented enough evidence to allow the jury to find in her favor." *Vega v. Chicago Park District*, 954 F.3d 996, 1004 (7th Cir. 2020) (citing *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016)). "Under *Ortiz*, we therefore ask whether the totality of the evidence shows discrimination, eschewing any framework or formula." *Igasaki*, 988 F.3d at 958. Under either approach, Mahran falls short.

The Court starts with *McDonnell Douglas* and considers whether Mahran was subjected to any adverse employment actions. Mahran argues that he suffered at least four adverse actions: (1) that his overtime was restricted, (2) that his FMLA rights were limited, (3) that he was transferred to Cermak, and (4) that he was terminated.

The first and second allegedly adverse actions can be quickly dispatched. First, Mahran has identified no evidence in the record establishing that his overtime was restricted. Instead, Mahran points only to evidence that at various points he *complained* about overtime. [109] ¶ 17. This is insufficient to establish that he was in

fact denied overtime. Second, Mahran presents no evidence to suggest that his FMLA rights *were* limited, and he does not genuinely dispute Defendant's factually supported claim that those rights were not limited in any way. *See* [104] ¶ 22.[9]

Next, Defendant argues that the Mahran's transfer to Cermak was not an adverse employment action. "A lateral job transfer within an organization may constitute an adverse employment action, for example, if it reduces the employee's "opportunities for future advancement." *O'Neal v. City of Chicago*, 588 F.3d 406, 409 (7th Cir. 2009). Even where an employee's salary, title, and benefits remain unchanged, a transfer may still be adverse where the new job does not involve the use of the same skills, where there are more than trivial differences between the jobs, or where the reassigned job is objectively inferior. *Tart v. Illinois Power Co.*, 366 F.3d 461, 473-75 (7th Cir. 2004); *but see also Herrnreiter v. Chicago Housing Authority*, 315 F.3d 742 (7th Cir. 2002), *cert. denied*, 540 U.S. 984 (2003) (no adverse action where employee was transferred to a new job that precluded him from travelling and using a company car because his idiosyncratic preferences did not justify "trundling out the heavy artillery of federal anti-discrimination law"); *Flaherty v. Gas Research Inst.*, 31 F.3d 451 (7th Cir. 1994) (no adverse action where employee's title was changed and he had to report to a former subordinate, holding that a change that bruises the plaintiff's ego absent other evidence is insufficient).

---

[9] Mahran does argue that he was faced retaliation for *exercising his rights* under the FMLA, which the Court addresses *infra*. But that argument axiomatically assumes that the retaliation was a result of his use of FMLA leave and not the result of his religion or any other Title VII-protected characteristic.

Although the Court can imagine that a transfer from a hospital to a jail may be undesirable for any number of reasons, the Court need not consider such hypotheticals because Mahran himself failed to litigate this issue. In Defendant's Rule 56 Statement, Defendant stated (and supported with citations to the record) that Mahran's job, pay, benefits, and employment opportunities were unchanged after the transfer. [104] ¶ 32. Mahran does not genuinely dispute that. *Id*. And in Mahran's statement of additional facts, Mahran fails to identify even *one* condition of his employment that changed after his transfer. *See* [105]. In his brief, Mahran spends a single sentence on the issue, saying without citing to the record that "[t]he duties at Cermak were physically strenuous, and the schedule interfered with Mahran's ability to observe Friday prayers." [102] at 8. Notwithstanding the failure to comply with Local Rule 56, Mahran admitted that he *was* able to observe the Salah prayer without incident on the only Friday that he worked at Cermak. [104] ¶ 12. Accordingly, the Court finds that Mahran's transfer to Cermak was not an adverse employment action.

That leaves only Mahran's termination. Defendant does not contest that being terminated is an adverse employment action. To withstand summary judgment under the *McDonnell Douglas* framework, Mahran must establish that another similarly situated employee received better treatment from his employer. Similarly situated employees need not be identically positioned, but "must be 'directly comparable' to the plaintiff 'in all material respects.'" *Patterson v. Indiana Newspapers, Inc.*, 589 F.3d 357, 365–66 (7th Cir. 2009) (quoting *Raymond v. Ameritech Corp.*, 442 F.3d 600,

14

610–11 (7th Cir. 2006)). "Whether a comparator is similarly situated is typically a question for the fact finder, unless, of course, the plaintiff has no evidence from which a reasonable fact finder could conclude that the plaintiff met his burden on this issue." *Johnson*, 892 F.3d at 895.

Mahran identified and relies on another CCHHS employee who was accused of falsifying a document in 2019 and successfully overturned a termination recommendation through grievance. [109] ¶ 36. The problem for Mahran is that the OIIG did not recommend his termination simply because he falsified a document; the OIIG recommended his termination because he falsified a document and then "*repeatedly sought to mislead* the OIIG" during its investigation. [101-36] at 7. Mahran does not identify any similarly situated employee who also repeatedly sought to mislead the OIIG during its investigation into that employee's wrongdoing. No reasonable fact finder could conclude that Mahran met his burden on this issue. Accordingly, Mahran cannot survive summary judgment on his religious discrimination claim under the *McDonnell Douglas* Framwork.

Under the more holistic approach adopted in *Ortiz*, Mahran also fails. At bottom, he does not establish a single fact suggesting that he was terminated because of his religion. Taking the undisputed facts in a light most favorable to Mahran, all that can be said is (1) in 2019 he filed a successful complaint with the EEO office based on discrimination he faced as a result of his religion, (2) that the OIIG initiated an investigation into his job application in late 2020, and (3) that he was terminated following that investigation in January 2021. "For an inference of causation to be

drawn solely on the basis of a suspicious-timing argument, [the Seventh Circuit] typically allow[s] no more than a few days to elapse between the protected activity and the adverse action." *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). Here, the adverse action occurred over a year after Mahran filed his EEO complaint, which is far too late to withstand summary judgment in the absence of other evidence of religion-based discrimination.

Mahran also makes much of the Krasucki Email, wherein Krasucki emailed Pramuk-Volk discussing how to "silence" Mahran and Pramuk-Volk replied "How ominous." Ominous, indeed. Putting aside Krasucki's and Pramuk-Volk's ill-advised decision to talk like supervillains in a taxpayer-funded job, the email itself makes clear that Krasucki wanted to "silence" Mahran because he was repeatedly asking for information about his job responsibilities that had already been provided to him, not because of his religion. Mahran also fails to establish that Krasucki and Pramuk-Volk had *anything to do* with the OIIG investigation or the decision to fire him. Mahran fails to *provide any information about either Krasucki or Pramuk-Volk* other than their job titles and that they sent these emails.[10]

Taking the emails in the light most favorable to Mahran, they may suggest that he was terminated for some reason other than his falsified job application and his attempts to interfere with the OIIG's investigation. But they cannot be read to

---

[10] Even if Mahran had established that his transfer to Cermak was an adverse action (or indeed if he had even disputed the facts demonstrating that it was not an adverse action), the Court would still grant Defendant summary judgment on this count. There is no evidence that Mahran was transferred because of his religion. Mahran argues that the Russell Email, wherein his union president Lisa Russell said that "[w]e need to have [Mahran] moved as soon as possible," establishes discrimination. But (1) neither Russell nor the union is a defendant in this action, and (2) Mahran does not establish that Russell had anything to do with his transfer.

suggest he was terminated because of his religion. Cook County is thus entitled to summary judgment on Mahran's religious discrimination claim.

## II.    FMLA Claim

Mahran presents two theories in support of his FMLA claim: first, that Cook County interfered with his FMLA rights, and second that Cook County retaliated against him for exercising his rights.

To prevail on a claim for interference with FMLA rights, a plaintiff must show (1) eligibility under the Act, (2) that the employer was covered, (3) that the plaintiff was entitled to leave, (4) that proper notice was given, and (5) that the employer denied FMLA benefits to which the plaintiff was entitled. *Makowski v. SmithAmundsen LLC*, 662 F.3d 818, 825 (7th Cir. 2011). The Court need not waste time addressing this theory because Mahran does not genuinely dispute that he was ever denied FMLA benefits, [104] ¶ 22, so he cannot satisfy the fifth element.[11]

The Court turns next to his retaliation claim. "Firing an employee to prevent her from exercising her right to return to her prior position can certainly interfere with that employee's FMLA rights." *Simpson v. Off. of Chief Judge, Cir. Ct. of Will Cnty.*, 559 F.3d 706, 712 (7th Cir. 2009) (internal citations omitted). Courts "evaluate a claim of FMLA retaliation the same way that we would evaluate a claim of retaliation under other employment statutes." *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503

---

[11] In his Rule 56 Statement, Mahran places significant emphasis on the two-hour call-in requirement for FMLA leave. *See* [109] ¶¶ 10-16. But in his brief, Mahran does not address the requirement. Mahran admits that he was never disciplined on any instance related to the call-in policy, [104] ¶ 26, and does not present evidence that he was denied FMLA benefits for failing to adhere to the policy. The call-in policy is a moot point.

(7th Cir. 2004). The Court's analysis is, in turn, much the same as its analysis of his religious discrimination claim.

First, Mahran cannot succeed under the *McDonnell Douglas* framework because he does not identify any similarly situated employees who repeatedly sought to interfere with an OIIG investigation.

Mahran also cannot prevail under the *Ortiz* framework. Like his religious discrimination claim, Mahran fails to provide any evidence that he was terminated as a result using FMLA leave. The undisputed evidence shows that he was terminated because he falsified his employment application and repeatedly sought to interfere in an OIIG investigation. While the Krasucki Email does suggest that at least some individuals at CCHHS might have had a separate motivation for "silencing" Mahran, as discussed above, Mahran fails to put forward any facts establishing that either of those individuals had any involvement in the OIIG investigation or his termination. And the email discusses silencing him for repeatedly asking about information related to his job description CCHHS policies around work accommodations for disabled individuals; it does not suggest that he would be silenced for using FMLA leave. Furthermore, Mahran himself argues that at the time this email was sent, he was on leave under a workers' compensation policy, *not* the FMLA. [104] ¶ 45; [105-1] at 179:6-180:15.

Because Mahran fails to put forth any evidence establishing that his rights to use FMLA benefits were interfered with or that that he faced retaliation for using FMLA benefits, Defendant is entitled to summary judgment on this claim, as well.

### III.    Common Law Retaliation Claim

Finally, the Court turns to Mahran's common law retaliation claim. Mahran's claim is in essence that he was terminated as retaliation for reporting his colleagues' errors in the EMERS system. Defendant argues it is entitled to judgment because Illinois law provides that a plaintiff can only prevail on a retaliation claim where the discharge violates public policy, and that Mahran has identified no such public policy. *See* [99] at 13-14 (citing *Turner v. Mem'l Med. Ctr.*, 911 N.E.2d 369, 374 (Ill. 2009) ("The common law doctrine that an employer may discharge an employee-at-will for any reason or for no reason is still the law in Illinois, except for when the discharge violates a clearly mandated public policy.")).

Mahran devotes a single clause in a single sentence to responding to this argument, and that clause is not supported by any law or other authority. Mahran states that ". . . Illinois law protects employees from being fired for reporting safety issues." [102] at 15. In fact, however, the opposite appears true: the Illinois Supreme Court has held that "the general concept of 'patient safety,' by itself, is simply inadequate to justify finding an exception to the general rule of at-will employment." *Turner*, 911 N.E.2d at 508. Whether a termination violated public policy is a question of law. *Id*. at 501-02. Mahran's failure to provide any supported legal argument identifying a violated public policy is thus fatal.

The Court notes, however, that under Illinois law a plaintiff can prevail on a retaliatory discharge claim where the employee is discharged for reporting "illegal or improper conduct." *Jacobson v. Knepper & Moga, P.C.*, 706 N.E.2d 491 (1998). But

the illegal or improper conduct that the plaintiff reports must itself be a violation of public policy, which Mahran has failed to cogently argue. *Williams v. Merle Pharmacy, Inc.*, No. 15-CV-1262, 2015 WL 6143897, at *7 (C.D. Ill. Oct. 19, 2015) (citing *Bourbon v. Kmart Corp.*, 223 F.3d 469, 472 (7th Cir. 2000)). And the plaintiff's intent in reporting the conduct must be to actually "blow this whistle." *Michael v. Precision Alliance Group, LLC*, 952 N.E.2d 682, 689 (lll. App. Ct. 2011). It is challenging to see how Mahran's conduct here—where he claims to have reported a handful of isolated mistakes in a purely internal reporting system—can be seen as blowing the whistle on illegal or improper conduct. As noted, however, Mahran failed to reckon with any law on the tort of retaliatory discharge, and it is not the job of the Court to research and construct legal arguments for parties. *Beard v. Whitley Cty. REMC*, 840 F.2d 405, 408-9 (7th Cir. 1998).

Finally, even if Mahran *had* successfully identified a public policy, his claim would nonetheless fail for the reasons his other claims fail. He presents no evidence that he was terminated (or transferred) because he reported his colleagues' mistakes in the EMERS system. Defendant is thus entitled to judgment on Mahran's retaliatory discharge claim as well.

## CONCLUSION

For the stated reasons, Defendant's motion for summary judgment [98] is granted. The Clerk is directed to enter judgment in Defendant's favor and against Plaintiff and terminate the case.

E N T E R:

Dated: October 27, 2025

_____
MARY M. ROWLAND
United States District Judge